UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| WILLIAM FLETCHER,<br><br>              Plaintiff,<br><br>   v.<br><br>IDAHO DEPARTMENT OF CORRECTION; IDAHO COMMISSION OF PARDONS AND PAROLE; SANDY JONES; and KAREN CLIFFORD,<br><br>              Defendants. | Case No. 1:18-cv-00267-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

      Plaintiff William Fletcher, a parolee subject to parole conditions set by the Idaho Commission of Pardons and Parole ("the Commission"), is proceeding pro se in this civil rights action. The conviction for which Plaintiff is on parole is not a sex offense. Plaintiff alleges that, therefore, some of his parole conditions—those that have a sexual component, such as the requirement to attend sex offender treatment—and his assignment to a sex offender parole officer have violated his right to procedural due process.

      The Court previously dismissed Plaintiff's claims against the Commission and the Idaho Department of Correction because those entities are entitled to Eleventh Amendment immunity. *See Dkt. 26*. The Court also dismissed Plaintiff's claims for damages. *Id*. Therefore, Plaintiff's due process claims for injunctive relief against

Executive Director Jones and District 4 Deputy Manager Clifford, in their official capacities, are the only claims remaining in this action.

Defendants have filed a Motion for Summary Judgment with respect to the remaining claims. *Dkt. 44*. The Motion is now ripe for adjudication.[1]

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1(d). Accordingly, the Court enters the following Order granting Defendants' Motion for Summary Judgment and dismissing this case with prejudice.

## PRELIMINARY MOTION

As an initial matter, the Court must address Plaintiff's Motion for Hearing and Explanation. *Dkt. 43*. The Motion challenges the Court's previous decisions to grant Defendants' motions for extensions of time with respect to dispositive motion deadlines. *See Dkts. 37, 42*.

Plaintiff contends that the Court granted the extensions "without proper procedures" and without Plaintiff "being notified about it and having a fair opportunity to respon[d] or object to it." Plaintiff also alleges that the Court granted the extensions either to frustrate Plaintiff, who is "an educated Black African American … fighting for justice," or because the Court does not care about the law or the facts. Finally, Plaintiff

---

[1] Plaintiff filed a sur-reply to Defendants' Motion for Summary Judgment, entitled a Response to Defendants' Reply to the Plaintiff Declaration Motion to Deny Defendants' Motion for Summary Judgment. *Dkt. 48*. Plaintiff did not obtain leave of court to do so, meaning that the document was not authorized. *See* D. Idaho Loc. Civ. R. 7.1. Nevertheless, mindful of Plaintiff's pro se status, the Court has considered the arguments contained in the sur-reply.

asserts that the Court's extensions of time allowed Plaintiff "to be taken advantage of" and ignored the Federal Rules of Civil Procedure. *Dkt. 43*.

Plaintiff is mistaken. This Court reviewed Defendants' requests for extensions of time and determined that it did not need a response before granting them. In doing so, the Court appropriately exercised its broad discretion to control its docket in a manner consistent with its "overriding obligation to construe and administer the procedural rules so as 'to secure the judge, speedy, and inexpensive determination of every action and proceeding.'" *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1255 (9th Cir. 2010) (quoting Fed. R. Civ. P. 1) (reversing denial of motion for extension of time). The Court certainly did not intend to disadvantage Plaintiff, but merely to manage its ever-demanding caseload in an active manner, so that the Court and its staff can more efficiently administer justice to all.

The Court ensures Plaintiff that in this Court justice is blind. None of the Court's rulings has been, or ever will be, based upon Plaintiff's race or any other personal characteristic—only upon the rule of law. Accordingly, Plaintiff's Motion for Hearing and Explanation will be denied.

## SUMMARY JUDGMENT STANDARD OF LAW

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored

procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if the party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court is "not required to comb

MEMORANDUM DECISION AND ORDER - 4

through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be stricken. Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In determining admissibility for summary judgment purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Where, as here, the party moving for summary judgment would not bear the burden of proof at trial, that party may prevail simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

The Court does not determine the credibility of affiants on summary judgment. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Ninth Circuit "ha[s] repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (internal quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id*.

## DISCUSSION

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's due process claims for injunctive relief against Defendants Jones and Clifford. Defendants contend that, given the undisputed material facts, Plaintiff cannot establish that he had a liberty interest related to his (1) being labeled as sex offender, and (2) being required to complete compelled sex offender treatment as a condition of parole. For the reasons that follow, the Court agrees.

**1.      Undisputed Facts**

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

In the Fourth Judicial District Court in Ada County, Idaho, Plaintiff was initially charged with two counts of lewd conduct with a minor under the age of sixteen. Plaintiff later entered an *Alford* plea "to a single reduced charge of felony injury to a child, based on Petitioner's 'rubbing the vaginal opening' of the minor victim."[2] *Fletcher v. Blades*, No. 1:15-cv-00166-REB, Dkt. 126 at 2, 2019 WL 79358, at *1 (D. Idaho Jan. 2, 2019) (Plaintiff's federal habeas corpus case) (quoting State's Lodging A-1 (amended information) at 74).[3] Plaintiff has consistently denied any sexual motivation in the

---

[2] Plaintiff asserts that he was supposed to plead guilty to "causing mental suffering to the victim" and that the prosecutor "changed it to me causing mental suffering to the victim by touch[ing] the vagina opening of the victim (a LIE)." *Plaintiff's Decl.* ¶ 5. Plaintiff also states that a polygraph test showed that Plaintiff has not touched "anyone in the State of Idaho under the age of 18 in any sexual way." *Id.* ¶ 11(E). However, the fact remains that Plaintiff pleaded guilty to the conduct described in the amended information—committing felony injury to a child by means of rubbing the vaginal opening of the minor victim. Plaintiff's federal habeas challenge to his conviction was unsuccessful. *See Fletcher v. Blades*, 1:15-cv-00166-REB (D. Idaho), Dkt. 125 & 126 (judgment entered Jan. 2, 2019). Thus, there is no genuine dispute that Plaintiff committed the crime of felony injury to a child by rubbing the child's vaginal opening.

[3] The Court takes judicial notice of its records in Plaintiff's federal habeas corpus case, which was dismissed in part and denied in part in January 2019. *See* Fed. R. Evid. 201(b); *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial notice of its own records in other cases.").

conduct underlying the offense and maintains that the touching occurred while he was giving the four-year-old child a bath. *See Plaintiff's Sur-Reply*, *Dkt. 48*, at 4. The amendment of the charges—from the two sex offenses initially charged to the single non-sexual offense to which he pleaded guilty—was instrumental in Plaintiff's decision to plead guilty.

In contrast to the original charges of lewd conduct with a minor, felony injury to a child as defined in Idaho Code § 18-1501 is not a sex offense—it does not require any sexual element for its commission. A conviction for felony injury to a child does not require that the defendant register as a sex offender. *See* Idaho Code § 18-8304 (listing offenses requiring registration). Therefore, Plaintiff is not required to register, and has not registered, as a sex offender. *Decl. of Jason Warthen* ("Warthen Decl."), *Dkt. 44-3*, ¶¶ 7, 13.d.

When Plaintiff was incarcerated, prison officials required that he attend sex offender treatment. *Plaintiff's Decl. in Supp. of Denying Motion for Summary Judgment* ("Plaintiff's Decl."), *Dkt. 46*, at ¶ 7. Plaintiff states, "Once you are placed on a sex offender case load in prison and have to do the sex offender treatment program, you are labeled/classified as a sex offender in prison during your entire incarceration …." *Id.* ¶ 8. Plaintiff describes the sex offender label or classification to which he was subjected in prison as "being called names such as child molester, Chum-mo, Mo etc.," evidently by other prisoners. *Id.*

Plaintiff was later granted parole. Plaintiff's psychosexual evaluation revealed that Plaintiff "is at a moderate risk to reoffend." *Warthen Decl*. ¶ 8. Even though Plaintiff's

crime of conviction is not a sex offense, and Plaintiff is not required to register as a sex offender, this risk to reoffend led the Commission to impose on Plaintiff certain parole conditions that are also commonly imposed on parolees convicted of sex offenses. *Id*. The Commission added these conditions presumably because the conduct underlying Plaintiff's conviction consisted of rubbing the vaginal opening of a child.

Four such sex-offense-related conditions are at issue in this case.[4] These four conditions are all intended to "prevent the issues that led to [Plaintiff's] criminal conviction," to rehabilitate Plaintiff with appropriate treatment and counseling, and to protect the public while Plaintiff is on supervision. *Id.* ¶ 12.

Condition 3 requires that Plaintiff obtain "a sex offender evaluation … and comply with all directives for treatment/counseling." *Ex. A to Warthen Decl.*, *Dkt. 44-4*. The purpose of this condition is to provide treatment providers and counselors "with information that led to the charges" against Plaintiff, so that they can tailor Plaintiff's treatment and rehabilitation "to reduce the risk that he reoffends." *Warthen Decl.* ¶ 13.a.

Condition 4 prohibits Plaintiff from associating with a minor unless an approved adult is present. *Ex. A to Warthen Decl.* Condition 5 prohibits Plaintiff from (1) frequenting "any establishment where pornographic material is the main source of income"; (2) possessing pornographic material; or (3) using devices with, or having any access to, the Internet unless permitted to do so by the Commission, and subject to any

---

[4] A fifth sex-offense-related condition of Plaintiff's parole, Condition 7, is that he must register as a sex offender "*if* required by law." *Ex. A to Warthen Decl.* (emphasis added). As already explained, it is undisputed that the law does not require Plaintiff to register. Therefore, this condition is not at issue.

MEMORANDUM DECISION AND ORDER - 9

restrictions set by the Commission. *Id*. These parole conditions are designed to keep Plaintiff from engaging in "behavior while on parole that may entice him to reoffend." *Warthen Decl.* ¶ 13.b.

Finally, Condition 6 requires that Plaintiff "[s]ubmit to polygraph and/or plethysmograph testing at the request of [Plaintiff's] treatment providers and/or supervising personnel." *Ex. A to Warthen Decl*. The purpose of this condition is similar to that of requiring a sex offender evaluation—it gives Plaintiff's treatment providers and counselors "additional information to ensure effective treatment to rehabilitate" him. *Warthen Decl*. ¶ 13.c.

Jason Warthen is Plaintiff's parole officer. According to Plaintiff, Warthen is a "sex offender parole officer" and works in a "sex offender unit" of the District 4 Probation and Parole Office. *Plaintiff's Decl.* ¶ 11.A. Warthen "handles all sex offender[] case loads." *Id*. Warthen also supervises other parolees like Plaintiff—those who were not convicted of a registrable sex offense, but who have been subjected to sex-offense-related parole conditions based on the conduct underlying the offense of conviction. *Id*.

2.  **Standards of Law Governing Plaintiff's Claims**

The Fourteenth Amendment of the U.S. Constitution guarantees due process of law. Under the Due Process Clause, the government cannot deprive a person of life, liberty, or property without following the proper procedures for doing do.

The right to procedural due process arises only when a constitutionally protected interest is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Therefore, courts analyze procedural due process claims in two parts. First, the Court must determine

MEMORANDUM DECISION AND ORDER - 10

whether the plaintiff possessed a constitutionally protected interest. *See Brown v. Or. Dep't of Corrs.,* 751 F.3d 983, 987 (9th Cir. 2014). If not, the inquiry ends. If, however, the plaintiff shows that he had a liberty or property interest of which the government deprived him, the Court must then consider, on a case-by-case basis, whether the plaintiff received the process that he was due. *See Wolff v. McDonnell*, 418 U.S. 539, 560 (1974). That is, a due process claim lies only where (1) the plaintiff was deprived of a protected interest, and (2) the state's procedures were constitutionally inadequate.

Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" or they may be created by state law. *Wilkinson*, 545 U.S. at 221. For a state law to create a protected liberty interest, the law must contain (1) "substantive predicates" that govern an official's decision-making process, and (2) "explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met." *Bonin v. Calderon*, 59 F.3d 815, 842 (9th Cir. 1995) (internal quotation marks omitted).

There is no liberty interest involved in merely being required to attend a sex offender treatment program, either as a pre-condition to parole eligibility or as a condition of parole itself. *Neal v. Shimoda*, 131 F.3d 818, 830 (9th Cir. 1997) ("The liberty interest implicated by [Hawaii's sex offender treatment program] is not merely the requirement that sex offenders complete the specified treatment program. If that were all that was at stake, we could probably not say that a liberty interest had been created, given the fact that prisons frequently maintain treatment and behavioral modification programs (such as anger management or alcohol abuse classes) that have long withstood legal

MEMORANDUM DECISION AND ORDER - 11

challenge."). However, a prisoner or parolee does have a recognized liberty interest when he is subjected to *both* "a mandatory treatment program whose successful completion is a precondition" for parole or parole eligibility *and* "the stigmatizing consequences of the attachment of the 'sex offender' label." *Id.*; *see also Vitek v. Jones*, 445 U.S. 480, 488 (1980) (holding that it was the stigmatizing classification of being transferred to a mental hospital "*together with* the mandatory behavior modification therapy" that gave rise to a liberty interest—not merely the therapy itself) (emphasis added).

This liberty interest in avoiding the dual burden of sex offender treatment and sex offender classification arises from the federal Constitution. *See Peterson v. Reinke*, No. 1:14-CV-00477-CWD, 2017 WL 1138135, at *4 (D. Idaho Mar. 27, 2017) (rejecting argument that liberty interest at issue in *Neal* arose only under Hawaii law because, "if the [Commission] intends to classify non-sex offenders as sex offenders as a matter of discretion or some other authority, the label remains a stigmatizing 'classification'"); *see also Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) (discussing "stigma plus test" and holding that a deprivation of "liberty" under the Due Process Clause, with respect to defamation-type allegations, includes "the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested, *plus* the denial of some more tangible interest") (internal quotation marks omitted). Therefore, the Court need not consider whether the State of Idaho has created a liberty interest in not being subjected to mandatory sex offender treatment and classification only upon a conviction for a sex offense. *Cf. Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) ("Alabama has not created a liberty interest in not being

MEMORANDUM DECISION AND ORDER - 12

classified as a sex offender absent a conviction for a sex related crime. Indeed, the ADOC regulations specifically declare otherwise.").

It is not entirely clear precisely which types of sex offender classifications—and the extent of the burden of the consequences of those classifications—are required to implicate a liberty interest when coupled with mandatory sex offender treatment. *See Vega v. Lantz*, 596 F.3d 77, 81–82 (2d Cir. 2010) (stating that "wrongly classifying an inmate as a sex offender *may* have a stigmatizing effect which implicates a constitutional liberty interest" and that misclassification as a sex offender can create a liberty interest "*in certain circumstances*") (emphasis added). However, this Court has previously held that the state must, at the very least, "formally" identify an individual as a sex offender in order to implicate such an interest. *Nigro v. Christensen*, No. 1:19-cv-00441-DCN, 2020 WL 5414562, at *5 (D. Idaho Sept. 9, 2020) (unpublished). An informal designation for purely internal purposes is not enough. *See id.* at *6 ("While Plaintiff is correct that, in layman's terms, he has been found guilty of a sex-related DOR offense, he is incorrect that, as a legal term of art, he has been 'labeled' a 'sex offender,' as in *Neal*.").

Being convicted of a sex offense that requires registration as a sex offender pursuant to a statutory registration scheme is undoubtedly sufficiently formal to constitute the kind of label or classification that creates a liberty interest.[5] *See id.* at *5–6 (holding that plaintiff failed to establish a liberty interest because "[n]either the state of

---

[5] Although such an individual has a liberty interest in avoiding mandatory sex offender treatment and registration, that individual—having been convicted in a court of law of a registrable sex offense—has already received all the process to which he is due. *Neal*, 131 F.3d at 831 ("An inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process.").

MEMORANDUM DECISION AND ORDER - 13

Idaho nor the IDOC has formally identified Plaintiff as a 'sex offender.' Rather, that is done only when a prisoner has been convicted in a court of law of a sex offense as defined in the Idaho Code."). A sex offender registration requirement need not be imposed by the legislature to give rise to a liberty interest; a parole condition that requires sex offender registration is also sufficient. *Peterson v. Reinke*, No. 1:14-cv-00477-CWD, 2017 WL 1138135, at *4 (D. Idaho Mar. 27, 2017) (stating that a liberty interest need not arise "from a law or regulation; it can arise from a 'classification' system that the [Commission] uses as a condition of parole, when coupled with a mandatory sex offender treatment requirement"); *see also Peterson v. Reinke*, No. 1:14-cv-00477-CWD, Dkt. 29 at 1–2 (D. Idaho Aug. 16, 2017) (unpublished) (clarifying that inmate did not have a protected liberty interest because his parole condition did not, in fact, require him to register as a sex offender); *Coleman v. Dretke*, 395 F.3d 216, 222 (5th Cir. 2004) (holding, in a case where a prisoner was required to attend sex offender treatment and to register as a sex offender, that "prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions").

On the other hand, not every sex-offense-related label or reference by the state gives rise to a protected interest. For example, in *Nigro*, this Court considered whether a prisoner had a liberty interest where prison officials included, in the plaintiff's file, information that the inmate had committed a disciplinary offense. *Nigro*, 2020 WL 5414562, at *5. This disciplinary offense, though not defined as a sex offense, did contain a sexual component because of the conduct underlying the offense. As a result, the

MEMORANDUM DECISION AND ORDER - 14

information in the file included "a description of the sexual nature of the incident," despite the non-sexual definition of the offense of which the plaintiff was found guilty. *Id*. Prison officials had made no formal categorization or label of Petitioner as having committed a sex offense. Because the label at issue was not sufficiently formal, but instead was an internal description in the prisoner's file of the prisoner's sexual misconduct, this Court held that the prisoner did not have a liberty interest protected by the Due Process Clause. *Id*. at *6.

It follows from *Nigro*, then, that simply being informally referred to as a sex offender by a state official—for example, a parole officer telling a parolee he is a sex offender when the parolee's conviction was not for a sex offense—is not enough. Additionally, an informal assignment of a sex offender label for purposes of determining an individual's amenability to treatment or risk of dangerousness does not implicate a liberty interest. *Vega*, 596 F.3d at 79, 83–84 (finding no liberty interest in assigning "sex offender needs score" or "sex offender risk score," which were "designed to assess what rehabilitative treatments were appropriate[] and … to assess [prisoner's] risk of dangerousness"—even when that assignment was based on acquitted conduct). In such a case, the sex offender "label" is not a formal classification. It is merely an internal designation used to facilitate an individual's treatment and supervision and, thus, does not give rise to a protected liberty interest.

MEMORANDUM DECISION AND ORDER - 15

### 3. Defendants Are Entitled to Summary Judgment on Plaintiff's Remaining Due Process Claims

#### A. *Plaintiff's Claims Based on Events in Prison Are Moot*

Plaintiff is no longer incarcerated. Therefore, any claims for injunctive relief based on Plaintiff's having been labeled a sex offender and required to attend sex offender treatment while he was in prison are moot. *See Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) ("Johnson was transferred to a federal correctional facility in Washington. Because he has demonstrated no reasonable expectation of returning to [his previous correctional facility], his claims for injunctive relief relating to [that facility's] policies are moot."). Because Plaintiff's claims for damages have already been dismissed, Plaintiff no longer has any viable claim based on the fact that prison officials labeled him as a sex offender, and required him to complete sex offender treatment, while incarcerated. Instead, the claim at issue here is that Plaintiff has been classified as a sex offender for purposes of *parole* and is required, as a condition of that parole, to attend sex offender treatment.

#### B. *Plaintiff's Claims Based on Parole Assignment and Conditions Fail Because He Cannot Establish a Protected Liberty Interest*

To succeed on his due process claims at trial, Plaintiff would have to establish that he had a liberty interest in not being classified as a sex offender for purposes of parole and not being required to attend sex offender treatment as a condition of parole. Though Plaintiff has been compelled to attend sex offender treatment, Defendants have met their initial burden of showing that Plaintiff has not been subjected to the other component of

the liberty interest discussed in *Neal* and *Nigro*—the formal, stigmatizing classification of "sex offender."

Plaintiff is not required to register as a sex offender. Moreover, defendants have provided evidence that Plaintiff's parole conditions were all imposed for the purpose of Plaintiff's rehabilitative treatment and that the challenged conditions further that purpose. *See Warthen Decl.* ¶ 13 and *Ex. A*. Thus, these conditions are part and parcel of Plaintiff's mandatory sex offender treatment, which—as explained in *Neal* and *Nigro*—is not enough to implicate a liberty interest. *See Meza v. Livingston*, 607 F.3d 392, 400 (5th Cir. 2010) (describing parole conditions requiring polygraph examinations as being part of sex offender treatment).

Because Defendants have met their initial burden on summary judgment, the burden now shifts to Plaintiff to show that the state has classified him as a sex offender such that, when combined with his mandatory sex offender treatment, he has a liberty interest protected by the Due Process Clause. Plaintiff has failed to do so.

Plaintiff relies on two aspects of his parole in arguing that the state has formally labeled him a sex offender. First, Plaintiff relies on his assignment to a "sex offender" parole officer who works in a "sex offender" parole unit. However, Plaintiff's supervision assignment is not a formal classification. Rather, it is simply an internal designation utilized by the Commission, most likely as a way to match Plaintiff with a parole officer who has the specialized experience required to give Plaintiff the most appropriate kind of supervision and the best chance at rehabilitation. This type of informal label is akin to the sex offense reference at issue in *Nigro*, 2020 WL 5414562, at *6, and the sex offender

MEMORANDUM DECISION AND ORDER - 17

treatment score at issue in *Vega*, 596 F.3d at 83–84, neither of which constituted the sort of stigmatizing classification that implicates a liberty interest. Any "sex offender" label that has attached to Plaintiff as a result of this internal and informal designation does not implicate a protected interest.

Second, Plaintiff relies on the challenged parole conditions themselves—Conditions 3, 4, 5 and 6—and argues that they constitute a sufficiently stigmatizing "sex offender" classification or label. However, as explained above, Defendants have submitted evidence that the challenged parole conditions further Plaintiff's rehabilitative treatment and, as a result, reduce his risk to reoffend. *Plaintiff's Decl.* ¶ 11.G. Plaintiff's conclusory allegation that the imposition of Conditions 3, 4, 5, and 6 "is not rehabilitation" does not constitute a genuine and material factual dispute and, thus, does not overcome Defendants' uncontroverted evidence that the conditions are part and parcel of Plaintiff's rehabilitative treatment. Like Plaintiff's assignment to a sex offender parole officer in a sex offender parole unit, these treatment-driven parole conditions are not a formal classification of Plaintiff as a sex offender.

All Plaintiff can establish in this case is that he was compelled to undergo sex offender treatment and to comply with treatment requirements as a condition of parole. Such treatment requirements, absent a formal "sex offender" classification, does not give rise to a protected liberty interest. Plaintiff cannot establish that the Commission has formally labeled Plaintiff a sex offender. Instead, the Commission internally and informally assigned Plaintiff's to a sex offender parole officer in a sex offender parole unit. Therefore, as a matter of law, Plaintiff cannot establish that he had a liberty interest

protected by the Due Process Clause, and Defendants are entitled to judgment as a matter of law on Plaintiff's remaining claims.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Hearing and Explanation (Dkt. 43) is DENIED.

2. Defendants' Motion for Summary Judgment (Dkt. 44) is GRANTED. Plaintiff's remaining claims are DISMISSED with prejudice, and judgment will be entered in favor of Defendants.

DATED: December 3, 2020

_____
B. Lynn Winmill
U.S. District Court Judge